UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CURTIS NIMMONS,

                                Plaintiff,

                v.

BRIAN FISCHER, Commissioner and
K. FLANAGAN, Superintendent,

                                Defendants.

_____

|  |  |
|---|---|
| | **REPORT**<br>**and**<br>**RECOMMENDATION** |
| | **11-CV-00817A(F)** |

APPEARANCES:        CURTIS NIMMONS, *Pro Se*
                            89-A-2623
                            Bellevue Mens Shelter
                            400E. 30th Street
                            New York, New York 10016

                            ERIC T. SCHNEIDERMAN
                            ATTORNEY GENERAL, STATE OF NEW YORK
                            Attorney for Defendants
                            GEORGE MICHAEL ZIMMERMANN
                            Assistant Attorney General, of Counsel
                            Main Place Tower
                            Suite 300A
                            350 Main Street
                            Buffalo, New York 14202

## <u>JURISDICTION</u>

        This case was referred to the undersigned by Honorable Richard J. Arcara on

May 13, 2012, for pretrial matters, including report and recommendation on dispositive

motions.  The matter is presently before the court on Defendants' motion to dismiss for

failure to state a claim (Doc. No. 9), filed May 9, 2012.

## BACKGROUND

Plaintiff Curtis Nimmons ("Plaintiff"), proceeding *pro se*, commenced this civil rights action on September 27, 2011, while incarcerated at Groveland Correctional Facility ("Groveland"), in Sonyea, New York, alleging Defendants violated Plaintiff's rights under the First and Fourteenth Amendment in connection with the confiscation of religious materials from Plaintiff and subsequent charging Plaintiff in a false misbehavior report. Both Defendants to this action, are employees of New York Department of Corrections and Community Supervision ("DOCCS"), including DOCCS Commissioner Brian Fischer ("Fischer"), and Acting Groveland Superintendent K. Flanagan ("Flanagan") ("Defendants"). Plaintiff alleges three claims for relief including (1) Fischer violated his First Amendment right to religious freedom by confiscating from Plaintiff materials regarding The Nation of Gods and Earths ("NGE"), for which Plaintiff was subsequently disciplined for possession ("First Claim"); (2) Fischer twice disciplined Plaintiff for the same act, in violation of the First and Fourteenth Amendments ("Second Claim"); and (3) Flanagan violated Plaintiff's Fourteenth Amendment right to due process by affirming a procedurally flawed disciplinary hearing disposition finding Plaintiff guilty of several prison disciplinary infractions ("Third Claim").

In an order filed November 28, 2011 (Doc. No. 3) ("November 28, 2011 Order"), District Judge Michael A. Telesca dismissed the Second Claim for failure to allege facts establishing either Defendant's personal involvement in having Plaintiff charged a second time for the same prison infraction, allowing Plaintiff to file an amended complaint showing the requisite personal involvement if Plaintiff intended to pursue such claim. November 28, 2011 Order at 1-2. To date, Plaintiff has not filed any

amended complaint.

On May 9, 2012, Defendants filed the instant Motion to Dismiss (Doc. No. 9) ("Defendants' Motion"),[1] supported by the attached Memorandum of Law in Support of the Defendants' Motion to Dismiss (Doc. No. 9-1) ("Defendants' Memorandum"). In opposition to Defendants' motion, Plaintiff filed on May 22, 2012, an affirmation (Doc. No. 12) ("Plaintiff's Affirmation"). Defendants did not file any reply in further support of their motion. Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion (Doc. No. 9) should be GRANTED; the Complaint should be DISMISSED without prejudice.

## FACTS[2]

The facts are separately discussed with regard to each of Plaintiff's three claims.

**First Claim**

Plaintiff Curtis Nimmons ("Plaintiff" or "Nimmons"), is an inmate in the custody of New York Department of Corrections and Community Supervision ("DOCCS"). For his First Claim, Plaintiff alleges that he has, for more than 30 years, considered himself to be a member of the Nations of Gods and Earths ("NGE") religion, although in 2007, while incarcerated at Mohawk Correctional Facility ("Mohawk"), Plaintiff registered his religion as Rastafarian to avoid having to cut his dreadlocks. At some unspecified time, at an unspecified correctional facility ("the correctional facility"), unidentified prison

---

[1] The court notes that, for no readily apparent reason, Defendants denominated their motion as seeking summary judgment, despite specifying Defendants seek "[d]ismissal pursuant to FRCP 12(b)(6)." Defendants' Motion at 1.

[2] Taken from the Complaint filed in this action.

officials, based on a misapplication of DOCCS Rule 105.14 ("Rule 105.14) (prohibiting the participation in activities or possession of materials related to unauthorized organizations), confiscated from Plaintiff drafts of a book Plaintiff was writing on incarcerated sincere NGE members because Plaintiff is not registered with DOCCS as an NGE member.  On December 27, 2009, while Plaintiff was in the correctional facility's weight room with four other inmates, Corrections Officer Goodemote ("Goodemote"), approached the group, requesting their identification cards.  The inmates complied and Goodemote took the identification cards to an office where Goodemote remained with the identification cards until one of the inmates approached Goodemote to retrieve the cards and returned each to its respective owner. Goodemote then exited the office and again approached the table in the weight room where the inmates remained seated and instructed Plaintiff to "get your stuff and come with me."  Complaint, First Claim ¶ 15.  Goodemote escorted Plaintiff out of the weight room and told Plaintiff to go to the gym next door.

On Wednesday, December 30, 2009, Plaintiff was working at his assigned program in the correctional facility's messhall when he was approached by Corrections Officer Crescent ("Crescent"), and Sergeant Willson ("Willson"), instructed to "get his stuff," Complaint ¶ 12, and was escorted to the correctional facility's special housing unit ("SHU"), allegedly as a result of the December 27, 2009 encounter.  Complaint, First Claim ¶¶ 12-13.   On Thursday, December 31, 2009, Corrections Officer W. Peck ("Peck"), served Plaintiff with an inmate misbehavior report ("first misbehavior report"), charging Plaintiff with violating seven of DOCCS disciplinary rules, including possession of stolen property (116.13), stealing/misuse of state property (116.10), possession of

contraband (113.23), unauthorized assembly (105.10), unauthorized exchange (113.15), unauthorized organization (105.14), and altered property (116.11). Following a Tier III prison disciplinary hearing on the first misbehavior report, Plaintiff was found guilty on all seven charged violations, and sentenced to one year in special housing unit ("SHU"), and withdrawal of all privileges, and one year loss of good time. Complaint, First Claim ¶ 17. Plaintiff was transferred to Southport Correctional Facility ("Southport") to serve the SHU term.

Plaintiff appealed the guilty disposition on the first misbehavior report to Defendant DOCCS Commissioner Brian Fischer ("Fischer"), following which the disposition was modified on February 18, 2012, with Plaintiff re-sentenced to three months confinement in SHU, six months loss of recreation, packages, and phone privileges, and three months loss of good time. On April 2, 2010, Plaintiff was transferred from Southport to Attica Correctional Facility ("Attica").[3] On April 8, 2010 Plaintiff was issued his personal property, subsequent to which an unidentified corrections officer spent two hours searching the property, confiscating two letters and all Plaintiff's "cassette tapes that were returned to him from Mohawk tier office at Southport." Complaint, First Claim ¶ 19. Plaintiff then showed the corrections officer conducting the personal property search "Exhibit No. 14,"[4] which Plaintiff describes as "the list of items returned from Mohawk tier office submitted with Plaintiff Article 78 in the same matter." Complaint, First Claim ¶ 20. Plaintiff told the corrections officer the

---

[3] It is not clear when or where Plaintiff finished serving his SHU term.

[4] No copy of "Exhibit No. 14" is either attached to the Complaint nor found anywhere in the record.

two letters and cassette tapes the corrections officer had confiscated had been returned to Plaintiff "as a result of the Tier III that he was in SHU for and was sent to Attica as a result of it being modified." *Id.* Plaintiff was then charged in an inmate misbehavior report ("second misbehavior report"), with two violations of DOCCS disciplinary rules, including possession of contraband (113.23), and unauthorized group (105.14), which Plaintiff maintains were "the same exact charges on the prior Tier III. . . . " *Id.*, First Claim ¶ 21. Plaintiff showed Exhibit No. 14 to Acting Captain D. Barawski ("Barawski"), at a disciplinary hearing on the second misbehavior report, conducted on April 17, 2010, by Barawski.[5]

On June 8, 2010, Plaintiff appeared before the parole board for his fifth parole hearing, but the hearing was adjourned for 90 days pending the decision on Plaintiff's appeal of the April 17, 2010 Tier III hearing. When the parole hearing recommenced on September 8, 2010, Plaintiff was denied parole for another two years.

Plaintiff alleges he "was denied a program at Attica when he came off of keeplock after doing six months where he filed a grievance which was denied."[6] Complaint, First Claim ¶ 23. Plaintiff further alleges he "was subject to being denied to attend the messhall for meals, denied showers and recreation where he filed another grievance and wrote the superintendent. Plaintiff['s] grievance was informally resolved where he was moved to another block and able to attend the messhall, get shower and recreation." *Id.* ¶ 24. According to Plaintiff, when he received his personal property,

---

[5] The record is silent as to the disposition following the April 17, 2010 disciplinary hearing.

[6] Plaintiff does not allege when he was placed in keeplock confinement in Attica, and it is not clear whether such confinement was in connection to either the first or second misbehavior report. Nor does Plaintiff specify in what "program" he was denied the opportunity to participate.

more than 100 pages were missing from the second part of his autobiography, as well as materials pertaining to a third book Plaintiff was writing, *i.e.*, *Incarcerated Sincere Members of the Nation of Gods and Earths*. *Id.*, First Claim ¶ 25.

**Second Claim**

Plaintiff alleges that Defendant Fischer, "as Chief Administrator violated the principle of administrative res judicata" when Plaintiff was served with the second misbehavior report for possession of the same materials for which Plaintiff had already served time in connection with the first misbehavior report. Complaint, Second Claim ¶ 1. Specifically, confiscated from Plaintiff on both occasions were materials from the NGE manuscript Plaintiff was writing. *Id.*, Second Claim ¶ 2.

**Third Claim**

Plaintiff's Third Claim alleges that at some unspecified time, he was denied due process by Defendant Flanagan ("Flanagan"), then Acting Superintendent of Groveland Correctional Facility ("Groveland"), in connection with a Tier II disciplinary hearing charging Plaintiff with threatening another inmate, "Wallace," following an argument regarding the proper way to count rags while working in Groveland's laundry.[7] Plaintiff maintains that Defendant Flanagan affirmed on appeal the Tier II hearing's guilty disposition, despite numerous due process violations, including denying Plaintiff's request to call Wallace as a witness, without offering any proof that Wallace had refused to testify, such that there was no proof to substantiate the charged threat by Plaintiff; rather, Plaintiff was found guilty based only on the written inmate misbehavior

---

[7] The Complaint does not indicate what disciplinary sentence was imposed following the Tier II disciplinary hearing.

report ("third misbehavior report"), prepared by Sergeant McPherson ("Sgt. McPherson"). Plaintiff alleges the disciplinary hearing officer, who is not identified, found Plaintiff guilty because Plaintiff had filed an inmate grievance against Corrections Officer Gilbert ("Gilbert"), alleging earlier that week, Gilbert had sexually molested Plaintiff. According to Plaintiff, Gilbert arrived at the scene of the alleged threat incident, spoke with Wallace for 15 to 20 minutes, then called McPherson who arrived and spoke for an hour with Wallace inside Groveland's laundry room facility's office. Plaintiff also maintains the Tier II disciplinary hearing was not completed within 14 days of the issuance of the third misbehavior report, as DOCCS regulations require.

## DISCUSSION

**1.     Motion to Dismiss**

Defendants move to dismiss Plaintiff's civil rights claims for failing to state a claim for which relief can be granted, arguing the Complaint fails to allege the requisite personal involvement of Defendants Fischer and Flanagan necessary to state a civil rights claim. Defendants' Memorandum at 6-10. Defendants also argue Plaintiff has failed to allege a Fourteenth Amendment due process violation in the absence of any allegation that as a result of being found guilty of the charged disciplinary violations, Plaintiff suffered any hardship that was atypical and significant when compared to the ordinary incidents of prison life. *Id.* at 10-11. According to Defendants, Plaintiff has failed to allege facts establishing Plaintiff was denied notice of the charges, a written statement from the fact finder as to the evidence on which the hearing officer relied, the reasons for the disciplinary action taken, the right to call witnesses, and the right to

present documentary evidence.  *Id.* at 11-12.  Defendants assert *Heck v. Humphrey*, 512 U.S. 477 (1994) bars the First Claim because a finding in favor of Plaintiff on such claim would necessarily imply the invalidity of Plaintiff's conviction on the first and second misbehavior reports.  *Id.* at 12-13.  Defendants further argue the alleged violation of a state regulation is insufficient to state a claim in a § 1983 action.  *Id.* at 13. In opposition to dismissal, Plaintiff argues both Fischer and Flanagan acted as the chief administrator with regard to the first, second and third misbehavior reports, such that they cannot escape liability for lack of personal involvement.  Plaintiff's Response ¶¶ 2-9.

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  The Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678).  "'Second, only a

complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. Further, the court is obligated to liberally construe a complaint alleging a § 1983 claim, even though not filed *pro se*. *Leonard Partnership v. Town of Chenango*, 779 F.Supp. 223, 234 (N.D.N.Y. 1991) (construing allegation by plaintiff, represented by counsel, that defendant town denied building permit as due process violation even though § 1983 was not mentioned in the complaint where such construction did not prejudice town given that defendant itself had construed complaint as based on § 1983 and accordingly addressed claim).

Section 1983, "allows an action against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, "'is not itself a source of substantive rights.'" *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'. . . ." *Id*.

The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Taylor*, 466 U.S. 635, 640 (1980)). Here, Plaintiffs' first two claims for relief allege deprivation the constitutional rights under 42 U.S.C. § 1983, including the First Amendment ("First Claim"), and the Fourteenth Amendment ("Second Claim").

In the instant action, it is undisputed that Defendants, as DOCCS employees, acted under color of state law in connection with the events on which Plaintiff's claims are based. Thus, for the purposes of alleging civil rights claims, the remaining relevant inquiry is whether Defendants' conduct, as alleged by Plaintiff, deprived Plaintiff of any federal constitutional right actionable pursuant to § 1983 including, as Plaintiff alleges, his First Amendment right to practice his religion, or his Fourteenth Amendment right to due process.

**2.      Second Claim**

Preliminarily, the court addresses Plaintiffs' Second Claim alleging Fischer, "as Chief Administrator," violated the principle of *res judicata* when Plaintiff was served with a second misbehavior report for possession of the same materials pertaining to Plaintiff's manuscript regarding NGE, that were confiscated from Plaintiff at an earlier date. Significantly, as Defendants argue, Defendants' Memorandum at 9, the Second Claim was already dismissed by Judge Telesca for failure to allege facts establishing either Defendant's personal involvement in having Plaintiff charged a second time for the same prison infractions. November 28, 2011 Order at 1-2. Although Judge Telesca

allowed Plaintiff to file an amended complaint showing the requisite personal involvement if Plaintiff intended to pursue such claim, *id.* at 2, no such amended pleadings were ever filed. Accordingly, Defendants' Motion should be GRANTED as to Plaintiff's Second Claim.

### 3.    Personal Involvement

Defendants argue Plaintiff has failed to allege the requisite personal involvement of Defendants with regard to the First Claim (Fischer) and the Third Claim (Flanagan). Defendants' Memorandum at 9-10. Plaintiff argues in opposition that the personal involvement of both Defendants is established by the fact that each Defendant acted as DOCCS's chief administrator in affirming the disciplinary hearing dispositions. Plaintiff's Affirmation ¶ 2. According to Plaintiff, Fischer, as DOCCS Commissioner, was aware of DOCCS policy of discriminating against members of the NGE, *id.*, especially because Plaintiff wrote Fischer numerous letters complaining of such policy, *id.* ¶ 3, and Fischer, in support of dismissal, does not argue he was not made aware of such policy, yet took no action to stop the policy. *Id.* ¶¶ 4-6. Plaintiff further maintains Flanagan's personal involvement is based on "essentially the same" reasons as Fischer's personal involvement. *Id.* ¶ 7.

Local government officials sued in their official capacities are "persons" for purposes of civil rights actions. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 690-91 (1978). To establish liability under § 1983, a plaintiff must show the defendant was personally involved in the alleged constitutional violation. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). A mere linkage in the chain of

command, however, is insufficient to implicate a government official in a § 1983 claim.

*Id.* To establish supervisor liability under § 1983, the plaintiff show at least one of the following:

> "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."

*Id.* (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)).

Further, that a defendant affirmed the disposition of an inmate's administrative disciplinary hearing is not, without more, sufficient to impose liability on the defendant under § 1983. *Abdur-Raheem v. Selsky*, 598 F.Supp.2d 367, 370 (W.D.N.Y. 2009) (citing cases and holding bare allegation that DOCCS Director of Special Housing/Inmate Disciplinary Program affirmed disposition of inmate plaintiff's administrative segregation hearing, pursuant to which plaintiff was confined in SHU, was not enough to establish requisite personal involvement).

Here, with regard to the Third Claim, Plaintiff makes only a bare allegation that "Flanagan as acting Superintendent of Groveland Facility affirmed the Tier II hearing appeal that deprived [Plaintiff] of an impartial hearing with several violations." Complaint, Third Claim ¶ 1. Because such allegation alleges nothing more than that Flanagan affirmed Plaintiff's Tier II disciplinary hearing disposition, Plaintiff has failed to sufficiently plead Flanagan's personal involvement with regard to the Third Claim. *See Abdur-Raheem*, 598 F.Supp.2d at 370. As such, Defendants' motion should be GRANTED with regard to the Third Claim.

The First Claim against Fischer is equally sparse, with Plaintiff alleging merely that "Plaintiff appealed the disposition to Commissioner Brian Fischer and it was modified on February 18, 2010 . . . ." Complaint, First Claim ¶ 18. Moreover, even Plaintiff's argument in opposition to Defendants' motion – that he had previously written to Fischer on several occasions complaining about the disparate treatment exhibited by DOCCS officers to NGE members such that Fischer, by failing to act to halt such behavior, tacitly approved the unconstitutional conduct – if pleaded in the Complaint – would be insufficient to establish Fischer's personal involvement. *See Randle v. Alexander*, __ F.Supp.2d __; 2013 WL 2358601, at * 14 (S.D.N.Y. May 30, 2013) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (internal quotation marks omitted and citing cases)). *See also Long v. Crowley*, 2010 WL 5129102, at * 1 (W.D.N.Y. Dec. 10, 2010) (DOCCS officials' "mere receipt of letters protesting unconstitutional conduct is insufficient to allege personal involvement on their part, or to create liability under Section 1983." (citing cases)); *Woods v. Goord*, 2002 WL 731691, at * 7 (S.D.N.Y. Apr. 23, 2002) ("Receipt of letters or grievances, however, is insufficient to impute personal involvement." (citing cases)); and *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability." (citing cases)). "Were it otherwise, virtually every prison inmate who sues for constitutional torts by prison [officials] could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies and invariably the plaintiff's grievance will have been passed upon by the Superintendent."

*Thompson v. New York*, 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001). Plaintiff's letter complaints to Fischer are thus insufficient to establish personal liability as a matter of law. As such, Defendants' motion should be GRANTED with regard to the Third Claim.

Although the undersigned is recommending granting Defendants' motion based on a lack of personal involvement by either Defendant, Defendants' remaining arguments are addressed in the event the District Judge disagrees with the initial recommendation.

### 4.      *Heck v. Humphrey*

Defendants argue insofar as Plaintiff challenges in his First Claim the loss of good time credits and subsequent denial of parole, such claim is, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), barred until and unless Plaintiff can establish the disposition on the first misbehavior report was overturned. Defendants' Memorandum at 12-13. Plaintiff has not responded in opposition to this argument.

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), civil actions challenging the constitutionality of a criminal conviction are barred where such action, if successful, would necessarily imply the conviction was invalid. *Heck*, 512 U.S. at 486. Significantly, *Heck* has been applied to an action challenging procedural defects at a prison disciplinary proceeding at which an inmate's good time credits were revoked. *See Archer v. Fischer*, 325 Fed.Appx. 9, at *10 (2d Cir. 2009) (citing *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997) (holding state prisoner's claim for damages not recognizable under § 1983 if judgment in inmate plaintiff's favor would necessarily imply

the invalidity of his conviction of prison disciplinary proceeding resulting in loss of good-time credits)).

In the instant case, Plaintiff has alleged that he filed an Article 78 proceeding challenging the Tier III hearing decision on the first misbehavior report. Complaint, First Claim ¶ 20. Although Plaintiff provides no further information regarding the Article 78 proceeding, the court takes judicial notice that on June 23, 2011, the Article 78 proceeding on Plaintiff's first misbehavior report was granted in part in Plaintiff's favor, and the disciplinary proceeding's disposition reversed with regard to the charged violations of possession of stolen property, misuse of state property and unauthorized exchange, but upheld as to the charged violations of possession of unauthorized organizational activity and assembly, and possession of altered property and contraband. *See Nimmons v. Fischer*, 926 N.Y.S.2d 194, 195 (3d Dep't 2011). As such, *Heck* bars Plaintiff's Third Claim, which Plaintiff has not alleged was reversed in full, but only bars Plaintiff's First Claim to the extent Plaintiff did not obtain relief in the Article 78 proceeding.

**5.      Due Process Violation**

Defendants argue that insofar as Plaintiff alleges Defendants denied him due process in connection with the misbehavior report and disciplinary hearings, Plaintiff's claims fail because Plaintiff did not, as a result of such disciplinary actions, suffer any deprivation, nor was Plaintiff denied any due process. Defendants' Memorandum at 10-12. Defendants further assert that assuming, *arguendo*, various DOCCS regulations were violated during Plaintiff's Tier II hearing held at Groveland, such violations do not

state a Fourteenth Amendment due process claims because violations of state laws or regulations do not give rise to liability under § 1983. *Id.* at 13. Plaintiff has not argued in opposition to these assertions.

### A. Atypical and significant hardship

An inmate plaintiff's "liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (U.S. 1995)). It thus is necessary to look at the disciplinary punishment imposed to make this determination. *Palmer*, 364 F.3d at 64.

Plaintiff avers that the discipline sentenced imposed in connection with the guilty disposition rendered on his first misbehavior report included one year in SHU and concomitant loss of all privileges, and loss of one year good time. Complaint, First Claim ¶ 17. Following appeal, the disciplinary sentence was modified on February 18, 2010, to three months in SHU, six months loss of recreation, packages, and phone privileges, and loss of three months good time. *Id.* ¶ 18. According to Plaintiff, the loss of good time also caused the parole board to deny Plaintiff's request for parole for another two years. *Id.* ¶ 22.

When considering whether a particular prison disciplinary sentence imposed on the inmate plaintiff an "atypical and significant hardship," both the conditions of confinement and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged

17

interval might both be atypical." *Sealy v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (citation omitted).  While the Second Circuit has cautioned against recognizing a "bright-line rule regarding the length or type of sanction" meeting *Sandin's* "atypical and significant hardship" standard, courts within the Second Circuit have found prison disciplinary sentences in excess of 90-days keep-lock confinement with loss of privileges imposed on the inmate insufficient to implicate a protected liberty interest. *See Sealey*, 197 F.3d at 589-90 (holding 101 days confinement under regular SHU conditions not atypical or significant), *Walker v. Caban*, 2008 WL 4925204, at * 11 (S.D.N.Y. Nov. 19, 2008) (holding 90 days in solitary confinement did not implicate protected liberty interest); and *Rivera v. Coughlin*, 1996 WL 22342, at * 5 (S.D.N.Y. Jan. 22, 1996) (finding 89 days in keep-lock confinement with loss of privileges did not implicate protected liberty interest under *Sandin*).

Here, Plaintiff alleges he was held in SHU for three months, but fails to allege the conditions of such confinement were significantly atypical.  As such, it is not possible for the court to determine whether the conditions of confinement to which Plaintiff was subjected while house in SHU, as pleaded in the First Claim, posed an "atypical and significant hardship" on Plaintiff.

With regard to the Third Claim, the Complaint is silent as to what disciplinary sentence was imposed as a result of Plaintiff's Tier II disciplinary hearing at Groveland. As such, it is not possible to determine whether such sentence subjected Plaintiff to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (U.S. 1995).  Accordingly, this claim fails to allege a plausible violation of Plaintiff's due process rights.

Because Plaintiff has failed to plead facts regarding the conditions of confinement to permit the court to determine whether any disciplinary sentence imposed on Plaintiff constituted an "atypical and significant hardship," a required element for a due process violation, Defendants' motion should be GRANTED as to both the First and Third Claims.

**B.    Due Process**

Alternatively, insofar as the Complaint can be construed as alleging Defendants violated any DOCCS Directive, such claims fail because violation of a DOCCS Directive does not arise to a violation of constitutional rights to support a § 1983 civil rights claim. *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2013) (holding state prison directives do not create liberty interests protected by the Due Process Clause).  Rather, "regardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff* [*v. McDonnell*, 418 U.S. 539, 561-70 (1974)]."  Although the prison and state regulations before the court in *Holcomb* were of Vermont, the Second Circuit has held likewise with regard to New York regulations and DOCCS Directives.  *See Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) (holding New York statutes and DOCCS Directives do not create federally protected dues process entitlements to specific state-mandated procedures). Accordingly, Defendants' Motion should be GRANTED insofar as Plaintiff's First and Third Claims allege denial of due process based on violations of DOCCS Directives.

**6.     First Amendment**

Plaintiff also asserts in his First Claim that his First Amendment right to the free exercise of religion was violated by Defendants whose confiscation of Plaintiff's manuscript on the NGE was in furtherance of DOCCS's policy of disparate treatment against NGE members.  Complaint, First Claim ¶¶ 1-7.  According to Plaintiff, although the Second Circuit has recognized the NGE as a religion, DOCCS still treats the NGE as a gang and, accordingly, an inmate's possession of NGE materials is treated as possession of contraband. *Id.* ¶¶ 8-9 (citing *Marria v. Broaddus*, 2004 WL 1724984, at * 3 (July 30, 2004 S.D.N.Y.) (approving and adopting, after bench trial, DOCCS's proposed protocol pursuant to which NGE members can possess certain specified materials, documents, and literature)).  Although Defendants do not set forth an argument in support of dismissal of the First Amendment aspect of Plaintiff's First Claim, relying only on Defendants' lack of personal involvement in such alleged deprivation, there is a more basic reason why this claim should be dismissed.

Specifically, Plaintiff has alleged that despite his sincere adherence to the NGE's tenets, he has, since 2007, maintained his religious designation with DOCCS as Rastafarian, ostensibly so as to continue wearing his hair in the dreadlock style. Complaint, First Claim ¶¶ 10-11.  The court takes judicial notice that since 2010 DOCCS Directive 4914, which previously forbade non-Rastafarian inmates from wearing dreadlocks, has permitted dreadlocks be worn by any inmate regardless of specific religious designation.  *See* DOCS Directive 4194.III(B)(2) ("The dreadlock hairstyle is allowed.").  Plaintiff does not explain why he has not filed a form changing his religious designation to NGE given that his putative reason for designating his

20

religion as Rastafarian, *i.e.*, so as to continue wearing his hair in the dreadlock style, is no longer valid. Plaintiff's failure to change his religious designation from Rastafarian to NGE after the DOCCS grooming regulation was amended to permit all inmates, regardless of religion, to keep their hair in dreadlocks is significant.

In particular, although inmates are not stripped of their constitutional rights simply by virtue of their imprisonment, *Wolff*, 418 U.S. at 555-56, including the right to religious freedom, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), yet they retain only those rights that may be exercised consistent with legitimate penological objectives, *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995), and "reasonable limitations on the accommodation of religious practices necessary to achieve those objectives are permitted." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997). Further, "prison officials are not required to accommodate an inmate's religious demands without regard to whether or not the inmate is actually a member of the religion." *Id.* at 1096-97. Instead, DOCCS maintains a religious registration procedure, which "places, at most, a slight burden on an inmate's right to religious freedom while serving as an important and beneficial 'bright line' that enables prison officials to ascertain the seriousness of the inmate's religious commitment and respond accordingly." *Id.* at 1097. Requiring inmates to register their religious designation "eliminates speculation and guesswork on the part of prison officials and makes it less likely that a prisoner will manipulate the system by asserting various religions at various times." *Id.* As such, because Plaintiff failed to register his religion as NGE, he cannot claim that Defendants interfered with his sincerely held religious beliefs by confiscating his manuscript on the NGE.

Moreover, what DOCCS officials allegedly confiscated from Plaintiff were not religious materials, documents, and literature, as DOCCS protocol on NGE permits inmates to possess, *Marriah*, 2004 WL 1724984, at * 3, but, rather, was a manuscript Plaintiff was in the process of writing regarding the sincerity of belief held by incarcerated members of NGE. Not only is such material not protected under the DOCCS protocol, but Plaintiff fails to allege how literature emanating from his own mind constitutes religious material, the denial of which interferes with the practice of his faith.

Accordingly, the First Amendment religious freedom portion of Plaintiff's First Claim should be dismissed for failing to state a claim.

## CONCLUSION

Based on the foregoing, Defendant's Motion (Doc. No. 9) should be GRANTED, and the Complaint should be DISMISSED without prejudice to filing, **within sixty (60) days**, an amended complaint consistent with this Report and Recommendation.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     July <u>30</u>, 2013
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 30, 2013
            Buffalo, New York